Norfolk Southern Railway Company v. Alabama Department of Revenue, Colbert County, Alabama, Tommy Oswald, et al., and its case 21-11371, consolidated with 21-13233. Mr. LaCour, I see that you have reserved two minutes for rebuttal. You may proceed. Thank you, Your Honor. May it please the Court, Edmund LaCour on behalf of the State Appellants. These cases were brought by six different railroads challenging a tax that Alabama and various local governments administer to them but do not administer to water carriers who are engaged in interstate commerce. To prove that that tax is discriminatory, it is important that each railroad show that each is similarly situated to that comparator class they have selected, in this case, water carriers. None of the railroads in this case, or in these cases rather, have made that showing yet. They have made allegations, yet the District Court, based solely on allegations, has awarded them final judgment, which is going to render them a windfall of tens of millions of dollars of tax relief that they are not entitled to, at least not until they've proven their case. That ruling was based on two related and fundamental errors that require reversal. The first is what I'll call the precedential error. This is where the Court held that this Court's decision in 2018, and what I'll call CSX 3, was somehow determinative of factual disputes between the non-party railroads, who are now parties in this case, and the State. Even though CSX was a case brought only by CSX, involving only CSX, they were not there on behalf of an industry, CSX was not there representing a class, and therefore, when this Court resolved the CSX litigation, yes, it made legal holdings, and those legal determinations will bind lower courts, but did not make any factual findings that could be binding as to an entire industry. That's not how precedent works, that's not how Article 3 works. Let me ask you a little bit about that, or probe that a little bit. So, here's how I understand precedent, and I could be way off, so tell me if I'm way off. There are legal issues in every single case. The legal issue in the CSX case was whether Alabama had discriminated against it under the 4R Act. That's ultimately what the Court had to decide. The State had stipulated a one thing, we'll get to that in a second. It had argued that there were sufficient justifications. The Court rejected those with regard to the water carriers, and then reached the conclusion that it did. In the course of deciding cases, courts can take any number of roads to get a particular place. Often it can go very narrowly, and then sometimes it can write legal rules very broadly. And in this particular case, there's an odd wrinkle that both sides seem to advocate for the Court to have adopted the legal rule that it did. And that legal rule seemed to suggest that if, as long as Alabama, I think as long as the way that sentence starts in the end there, as long as Alabama maintains this tax scheme as it is right now, this is going to be a violation. How is that not a broad rule that applied to a narrow holding, a narrow legal issue that happens to be the same legal issue we have here? It's the same legal issue, but it's different facts. So if you had a plaintiff who established that smoking cigarettes caused her lung cancer, and this Court affirmed, that wouldn't mean that every single plaintiff who brings a copycat lawsuit has already established the key facts of her case. If in the course of doing that, so let's take the hypothetical, if in the course of doing that the Court held, we decide that narrow legal issue, and in the course of doing so it says, as long as somebody smokes and the smoking manifests in lung cancer, or the lung companies are going to be liable to the plaintiff. I think you'd be pre-deciding cases that weren't in front of you. Imagine if instead CSX 3 had come out the other way in favor of us, and CSX had not done a good job of proving discrimination. That wouldn't bind BNSF. They still had their separate lawsuit. That's probably part of the reason why they didn't intervene in the CSX case. There's no doubt that the bottom line doesn't bind anybody. It's the rule in getting to the bottom line that is part of the holding of the case, right? Yes, your honor. I think the only rule this Court could establish consistent with Article 3 in the CSX case, which again was between three parties, CSX, the Department of Revenue, and the Commissioner, was that if CSX, if a railroad shows that it is a principal competitor of the water carriers, then the Stormont Commerce Clause argument the state has raised to justify its not going to be sufficient to defeat a four-hour act claim. I'm having trouble with the Article 3 part of this. This isn't a great hypothetical, but I'm just coming up with it, so bear with me. If the lawsuit in front of a court was whether the light was red or green, and there was a trial, and in the course of doing that, for whatever reason, the court said lights in Jacksonville are always green as a matter of law, and applying that principle, we find for the plaintiff in this case. Why would that principle of law not uphold in every subsequent case that dealt with that same issue? Well, I think you're assuming that the Four-Hour Act establishes some industry-wide principle of law, which I think is the second argument in the red brief, and which I think is clearly inconsistent with the text and with- I want you to get there, but just one last thing. Part of the wrinkle here, and part of the difficulty that I'm having is that you both came to the court and said, court, here's the rule of law I want you to adopt, and that rule of law was not limited in any way. It was industry-wide. It was not limited to CSX, or in this case, or under the facts here, and where the state comes in and does that, and the court then adopts that rule as part of his decision, how can we not find that to be binding on the state? Your Honor, those statements that the state was making in the rehearing stage were related to, I think it's the third or fourth issue raised in the red brief, as to how broad the water carrier exemption extends. Is it only when a water carrier is picking up the goods in Alabama and going to a port outside of the state, or is it when it is picking up goods that are going to ultimately end up outside of the state, but maybe that water carrier is going to drop them off with another mode of transportation before they get out of state? And that's what we were trying to clarify there alongside CSX, consistent with state law. We were not trying to broaden CSX's victory to somehow extend to all 26 other railroads in the state of Alabama. That would be malpractice. And so I think that fundamental error, when it came to precedent, in fact, the judicial stoppel ruling for the District Court, too, because, again, you have to read these statements in context. And the CSX stipulation was raised in the context of the CSX litigation, which, again, only required proof that CSX was a principal competitor of the water carriers. Whether or not BNSF or any other railroad in the state was a principal competitor was neither here nor there to the resolution of that case as soon as it was established that CSX was a principal competitor. So first, there's no clear inconsistency, then, between us generally saying in the context of the CSX case that railroads are principal competitors of the water carriers and then specifically denying that in the BNSF litigation. And I take all of your points and your arguments on this issue, but you would recognize, as I'm sure you do, that this is an unusual factual stipulation. It carries a lot of baggage with it. It has been to this court any number of times. It has been to the Supreme Court twice. There are a lot of courts that have been relying on that stipulation for the general principles of law that have come out of it. And this is also unique in the sense that we have the state of Alabama and we have railroads. We have a heavily regulated industry. And so factual stipulations with these parties also carries baggage and tends to have a broader application than you might perhaps find in a personal injury case involving cigarette smoking. Well, I think, Your Honor, you still need to find the clear inconsistency. You still need to recognize that it must be egregious conduct. You need to recognize this is an extreme measure. It's actually an open question in this court whether or not judicial estoppel can even apply to a state because you're going to be undermining the state's and the public's interest in the application of the law. You're going to be depriving the state. Well, let's deal with inconsistency first. I mean, it seems to me that you were litigating the state. I don't mean you. The state was litigating the exact opposite fact at the same exact time in the same courthouse. I mean, in case number one, it is agreed X of this fact, not once, not twice, but three separate times. And as Judge Branch said, goes all the way up to the Supreme Court and back multiple times. And then in that same case is denying that very fact. All the more reason why you should be, I think what we're saying in the BNSF case, Norfolk Southern case, is context that should be leading you to the conclusion that the CSX stipulation really was just about CSX, rather than... How can we say... I mean, listen, whether it's malpractice or not is something I'm not going to get into, but it was written industry-wide, was it not? It was written... It said railroads. It didn't say all railroads. Sure. But it was not CSX specific. I mean, that's not a fair reading. That's correct. It did not say specifically CSX, but we have the example in the brief. If I take my boys to a farm to look for puppies, and there are golden retriever puppies jumping around, and I say, farmer, are dogs good pets for kids? And he says, yes. I'm not going to hold him to that when I later say, well, I bought a pit bull, and it turned out it wasn't a great dog for my kids. You have to read these things in context. You have to apply some common sense, particularly when we're dealing with, again, one of the most extreme measures that this court can apply in equity. And it should not be used to impose an inequity on the state and its taxpayers. Let's talk about the second part of this, which is the deception part. Is there a hole in the district court's order with regard to that? Absolutely, your honor. There is no evidence to suggest that we intended to deceive the district court in CSX. Can the district court imply that from how this happened? In other words, while the one hand is doing one thing, the other hand is doing the other with regard to the same thing? I think that is even more consistent with us understanding the CSX stipulation is limited just to that case. Again, there's no reason to think it was meant to apply to a future case. In Hunt v. Marchetti, a 1987 decision from this court, the court recognized that there are stipulations, even sometimes in the same case, that aren't meant to apply to a retrial. Why would we think that it's meant to apply to every tax claim? Is the language in our CSS case indicative that it was meant to apply more broadly to industry-wide, whether it's a holding or not? Doesn't that indicate that we at least thought so? Your honor, it's still our intent that ultimately matters at the end of the day, and the only evidence, and I'll sit down after this, the only evidence that the court came up with to try to read some malevolent intent into the state's actions is at page 36 of the opinion, suggesting that the broad stipulation was going to entitle us to broader relief. That's wrong for the reasons we were talking about at the very beginning of the argument. Whether we'd stipulated just to CSX, or we'd stipulate to all 27 railroads, would not have affected the breadth of this court's CSX3 decision at the end of the day. If you had ruled for us to say, dormant commerce clause is a good reason why the state does not have to treat the water carriers like they treat CSX, then that legal rule would apply the same whether or not the stipulation was to 27 railroads or as to one. So, the one piece of evidence the district court came up with to justify its conspiracy theory is no evidence at all. What about, what is the standard of review for us in looking at whether the district court, in the district court's finding of your, of the state's intent? It's abuse of discretion, your honor, but again, there's one piece of evidence that's based on a misunderstanding of how law works, and so that's a legal error, and it is always an abuse of discretion to get the law wrong. What do we make of the statements the state made in the companion, I'll call them the companion cases, the parallel cases, that whatever happens in CSX is going to dictate the result in, and I know I'm paraphrasing, but the result in the parallel cases. We didn't. Is that indicative that, that they were, the state was playing a little fast and loose? Absolutely not, your honor. Those were merely predictive statements. The district court truncated those quotes to say that we said that they were going to be dispositive. Parties together said we believe that this might be dispositive. Parties say that all the time in states, because it very well could have been dispositive, but if a predictive statement like that is enough to stop a party, you're not going to see them ever again in a state motion, and courts have never applied those. Even to get a full, even to get a full stay in the case, a full discovery stay, I mean, essentially those cases were frozen in time while CSX was going, based, it seems to me, on the represent, I mean, the court is, it's the same court in the same courthouse. The court's entitled to say, hey, I did this with the understanding of this, and that understanding didn't happen, right? Your honor, docket entry nine in the BNSF case is BNSF themselves saying that CSX case may not be dispositive of all the issues in this case, but it will likely significantly narrow the issues this court has to confront, and that was true, and everyone in these cases, the six railroads and all the local governments in the state benefited from waiting to see some of those legal issues narrowed. There's no prejudice whatsoever. The stay is exactly what they wanted. That's why they agreed to it again and again, even though since 2011, in these cases, we have been saying, no, we do not admit that you are principal competitors of the water carriers. They were on notice. They've been on notice for more than 10 years, so there's no one being blindsided here. There's no one playing fast and loose. This is an unprecedented application of judicial stop while doing great inequities through this equitable doctrine. It needs to be reviewed. I think your opposing counsel would probably agree that they benefited in large part from the stay, but I would assume that they would come back and say, we are not benefiting from the fact that the state is now causing us to have to go through discovery on the competition issue, and in fact, there may be evidence that is now stale because we relied on that stay. How would you address that? Your Honor, they've been on notice since 2011 when they alleged that they were principal competitors of the water carriers, and we denied it, and we've consistently denied it. There can be no prejudice when they were fully on notice when they agreed to those stays based on our position. Of course, it's not prejudice to make them prove their case before they're entitled to this windfall. Thank you. You have two minutes for a rebuttal. Thank you. Mr. Penfield? I see you have three minutes, and you're saving one for rebuttal. Yes, Your Honor. Please, the court. I just want to jump right in because you have very little time. It seems to me that the district court did not apply judicial estoppel to you directly. It seems to me that the way I read the order is that because the state was estopped and because the state of the law in Alabama is that the local district taxing authority derives from the state, and if the state isn't joined from doing something, then you can't do that very thing because your authority derives from the state, and so you also can't do that thing. That's as I understand the order. Do I have that right? Yes. That's our understanding of what the district court incorrectly held. Okay. So tell me, break down for me why. Don't worry about the estoppel part for the state. Assume that I think the state is estopped for the moment. Tell me why the district court got the rest of it wrong. Okay. And I know that my co-counsel is going to address some other pieces of this as well. I would say the fundamental flaw that the district court took was not finding, not finding that any of the local defendants violated the 4R Act. We are in district court in an act, in a case in which the railroad said local defendants have violated the 4R Act and should be enjoined. Doesn't the estoppel take care of most of that? In other words, the estoppel finds railroads as an industry are the competitor and that they are in competition with the waterways, and we said in our opinion that as long as this tax is there, that it's discriminatory. I mean, doesn't the combination of those two things sort of take care of the rest of it? No, Your Honor, it doesn't because you've still got to prove your case. Your case is the local defendants violated the 4R Act. There is no finding that the local defendants violated the 4R Act. Instead, what you have is the district court, based on an estoppel finding, saying that the state violated the 4R Act, and then under state law, the local defendants cannot. Tell me why that matters. That, I mean, why does it matter how the district court got to the conclusion that you can't do what you're doing if it's a violation, and let's say I agree with you that there's no finding of a violation. Why does that matter? I think there's three main points, and I believe that Mr. Green is going to primarily address the Tax Injunction Act piece, which says if the court is basing this on state law, the court can't do that. It violates the Tax Injunction Act. There's also a question about whether the so-called parallel tax doctrine actually means that local taxes have to mirror the state taxes, or instead, is there some room for I think there's a more fundamental error that the court undertook, which is that the railroad alleged the local defendants violated the 4R Act by treating competitors differently. The district court did not make that finding, and therefore, there cannot be an order against them. The 4R Act is clear that it applies to a state, a subdivision of state, or an authority. It treats those violations committed either by a state, Department of Revenue, or a local taxing authority. The railroads had to prove that the local taxing authority violated it. I see that my time is up. Are you suggesting that the stipulation is actually doing a lot of work in your favor, to the extent that the court may hold the stipulation against the state, the local authorities never entered into such stipulation, so that stipulation goes away, and now the railroads are going to have to prove their case against the local taxing authorities? Your Honor, what I would say is whether that stipulation applies or not, the railroads have to prove their case against the local taxing authorities because they have to prove their case within those local taxing jurisdictions, and that is found in the lines of the statute and in the Supreme Court's precedent in CSX 1 and 2. Thank you. Mr. Green, you have three minutes. Thank you, Your Honor. May it please the Court, Wilson Green for the City of Tuscaloosa. My co-counsel is Gary Sullivan for the Tuscaloosa Special Tax Board. To your Honor's last point, the language in CSX 2 is dead on point and says that you've got to prove discrimination in the taxing jurisdiction, and that is the critical point here is that the markets are totally different. Now, my real focus for your Honor's consideration is the Tax Injunction Act. Talk to me about that. I'm very interested in that issue. I think that's the real downfall here, and frankly, I think it was an effort and perhaps an understandable effort on the part of the District Court to try to short circuit all of this. So as I understand the way this works is the 4R Act has a carve-out, explicit carve-out for violations of the Tax Injunction Act. So if there had been found to be a violation, as there may be with the state, we don't have to worry about Tax Injunction Act. That's exactly right. But because your theory is the District Court never only applied this because of a matter of state law and didn't actually find a violation, we run into a Tax Injunction Act problem. That's the theory, right? Exactly right. The order goes right into the teeth of the Tax Injunction Act because the District Court was interpreting, and I would say misinterpreting, Alabama law with regard to the derivative taxing authority principle. But that is clearly a function of state law. Interestingly enough, even the railroads admitted that in some of their pleadings in the state court refund litigation involving the city of Birmingham. They specifically said it was part of Alabama law, and now they come in to this case, obviously, in their red brief and say, oh, no, that was really a violation of the Farrar Act. But that's not the way pages 42 to 48 of the District Court's opinion reads. So it really comes down to, for purposes of this discussion, how we read the District Court's order. If we read the District Court's order as applying the stipulation as counties and cities as privity with the state and as, therefore, having violated because they are competitors and the stipulation takes care of the jurisdiction issue that you're talking about, then we could say that the Tax Injunction Act isn't applicable. But if we read the order as not finding a violation, then the Tax Injunction Act would prohibit what the District Court did here. That would be true, except there's obviously, we would say, a constitutional problem with applying a stipulation against us in previous actions to which we were not parties under Jefferson County v. Richards and other cases that we've cited in our blue brief. You just constitutionally cannot take a stipulation made by a stranger party. Now, I understand the privity argument being made. I think I used the word privity very carefully. But I think that's a problem here because, again, we have to go back to CSX2. The discrimination has to take place in the taxing jurisdiction. Well, rail carriers and water carriers may be competitors in a statewide market. They are not necessarily competitors in a Tuscaloosa market, where we specifically talk about this in our blue brief, and my time has expired, if I could just finish my answer. The city of Tuscaloosa, for example, we have one plaintiff in this case, one railroad, who runs a short line, and there's no comparative water path. That's my only point. Thank you, Your Honor. Sorry, one more question. There is a river that runs through Tuscaloosa, am I wrong? A river runs through it, yes. I've been there once. There is a river there. The Black Warrior. That's right. Just not on a path that runs along the ASR short line. Okay. Thank you. Ms. Frawley, you have three minutes. May it please the court, my name is Jamie Frawley, and I represent Walker and Colbert Counties, and for the purposes of this argument and taking at least one extra lawyer out, I'm a district lawyer in Otago County, and I'm going to discuss specifically the issues of the state law errors that the district court made. The first one is that the district court and the railroads, in their briefing, always refer the tax, the tax, as if it's one tax, and in fact, there's a lot of different taxes. The record was not really developed enough in this case to get to the sources of the authorities for the various taxes, but as to the counties, you have some school taxes, what we call school taxes in Alabama, that is levied to general law, and admittedly, that general law uses the term parallel, but then you've got local laws, and in Alabama, we have reams of local laws, books and books of local laws, and they're all slightly different. But the general principle of Alabama law, as I understand it, is that if the state, let's take this case out of it, if the state did not have the authority to give tax X, then the local jurisdictions also don't have the authority to issue that same tax, right? It's not necessarily true as a matter of state law. Tell me why. So, there's actually, for example, in our Constitution, Article 4, Section 111.06, there are some differences in The district court, you know, this parallel tax doctrine, the district court held, well, local taxes must parallel, and it says must. That's only true as to either those past taxes that are levied or authorized to be levied under the general law or local laws that are passed after February 25th, 1997, and all of the parties in all of the pleadings, in this case, all the defendant parties, made that clear, that that's not necessarily true. You can't just assume that it's this broad tax. Alabama law from before our Constitution of 1901 up until just... So where's the independent authority for Walker County or Autauga County to issue this tax independent of the state? Where's that authority come from? So, and again, this is, of course, part of the problem with the procedural, how quickly this was done. Walker County, I believe, is school taxes. Colbert County, however, has, at least part of the taxes that are being challenged, has a local law in place, and that is in Alabama Code 45, and that one is not actually... It is a statute of specific reference that talks about, for example, the exemptions that were presently when it was passed in 2007, I believe. So I just want to be clear. You agree, at least as to some, the authority derives from the general authority authorized by the state, and there is parallelism, at least with regard to some of the counties and municipalities here, correct? The authority, yes, but the taxes themselves, no. Each tax, and this was said, as we've quoted centuries, and even as recently as December 2022, Alabama Supreme Court Chief Justice Parker said, each tax is sui generis. Sui generis, excuse me. So even if the authority is derivative, the question is, the taxes, and the taxes are not derivative. The tax is standalone. I see my time has expired. Mr. Jordan, you have two minutes. Thank you, Your Honor. I'm speaking for Irondale. Irondale presents a somewhat different factual setting from the other local defendants, and the court should be cognizant of it. The most significant fact is that there is no navigable water in Irondale. And so the tax that it imposes pursuant to a facially neutral ordinance, which is reproduced in the record, document 184, does not reach water carriers, does not exempt them. They're just an irrelevancy, if you will. The second thing that's factually distinct about Irondale is it came very late into this case in 2017. In other words, when all these stipulations were being made, Irondale wasn't here. In fact, in 2017, the railroad in Irondale and Birmingham discovered that they'd made a factual mistake, and that had resulted in the wrong municipality being a defendant and receiving the revenues for the purchases. So we believe that it's particularly unfair to saddle Irondale with some kind of stipulation from the CSX case. The other points I'd like to make to follow up on a couple of questions, on the issue of the Tax Injunction Act, I really want to take it a step further. Assume for some reason it doesn't apply, and I think there are good arguments that it very well does. But if it doesn't, there are still comity considerations that operate here with respect to the injunction. The statute which grants the authority of the district court to issue relief does not say that it abolishes all the traditional principles of equitable relief. And I would call your attention to the Brule case, decided the same day as CSX2, which notes specifically that even when the Tax Injunction Act does not apply, that the principles of comity still operate. Thank you, Mr. George. Thank you. Ms. Kelly, you have 25 minutes. Thank you, Your Honor. May it please the Court, I'm Misty Kelly. I represent BNSF Railway. I am arguing this morning on behalf of all of the railroads in the three consolidated cases. I should also disclose that I was part of the team that represented CSX in the previous litigation. There are two broad umbrella reasons that the district court was correct to grant judgment as a matter of law to the railroads. The first reason is the familiar application of binding precedent in the CSX case. The second reason is that the court did not abuse its discretion in applying judicial estoppel under the circumstances here. In our view, these are two independent alternative reasons, either one of which is sufficient grounds to affirm. We think that it's helpful to look at them separately because they really are not dependent on each other. So, let me push back on that. I'm going to start there. So, let's assume for the moment that I agree that that broad precedent would apply here in this case. I think your opposing counsel has a point when he talks about there being embedded factors in here, and those can't be binding as a matter of law. So, for example, the main sentence here would be, as long as the state retains the sale of used tax exemptions for communities that were engaged in foreign or international commerce in the United States. So, that triggers here, doesn't it? The 4-R Act forbids it in imposing sales of used tax legal fees here used by rail carriers engaged in foreign or international commerce in the United States. Isn't that a factual issue of whether a particular rail carrier is engaged in foreign or international commerce? In other words, that seems to be separate from what's just looking at that sentence. So, your question is, do we have a material factual dispute about whether these railroads are engaged in interstate commerce? I'll get to that question. My real question is, isn't that a fact? I think it's a mixed decision of law and fact. Okay. So, I agree with you there. There is a legal component to that sentence, but there's also a factual component. Now, in the CXX case, it clearly was stipulated that everyone agreed that it engaged in foreign or international commerce in interstate commerce. So, that wasn't an open question. But here, I mean, you all have even pleaded that fact. I mean, it's in the pleadings itself because it has to be pleaded as an element. That seems to be a fact. Then let's get to whether there's a material dispute. As I understand it, some of the folks on the other side of the table have agreed with that and some disputed that. Do I have that right or wrong? All of the state and local defendants admitted that these railroads are engaged in interstate commerce with the exception of three. Jefferson County, Autauga County, and the City of Birmingham. Those three entities simply said we are without sufficient information to admit or deny that. And therefore, deny it. Correct. But what the court found was that the other admissions in the complaint were sufficient to establish that these railroads are, in fact, engaged in interstate commerce. Railroads are the paradigmatic instrumentalities of interstate commerce and Before you go, though, I want to hear this. Before you submit that sentence and finish that thought, I just want to be clear then. You're now outside of just law. We're now in fact law. And so, the district court may or may not be right about that. But the reason this sentence alone is alone enough to get us over this. We need some other things to get us to violate this, right? Well, yes. We do have to show, the railroads do have to show that they are engaged in interstate commerce, that they're entitled to the protection of the 4R Act. Those are things that have to be established for the relief here. And the court correctly held that they were established. Okay, so talk to me. You were about to say, with regard to those who denied that they were without information, that the district court relied on some other facts in the complaint that were agreed. What were those facts that were agreed to and were not agreed to? So, all of the state and local government entities agreed that these railroads Hold on one second. Sorry about that. Can you hear me now? Valerie, can you hear me? Thanks. All right. Can you give back? We'll just give a minute at the end. Is that fair? Sure. That's fine. Thank you. Sorry about that. All of the state and local defendants agreed that these railroads are entitled to the protection of the 4R Act. And in order to be entitled to the protection of the 4R Act, you have to be a common carrier, an interstate common carrier by rail who is regulated by the STB. So, what does it mean to be regulated by the STB? And Judge Heikkila, in her opinion, noted that there's a statute that says what kind of hook you have to have for interstate commerce in order to be regulated by the STB. That's the 1995 ICC Termination Act where Congress specifically codified existing case law and said if you operate, even when you're doing intrastate moves, if you are operating as part of the interstate rail network, you are engaged in interstate commerce for purposes of STB regulation and, therefore, for purposes of the 4R Act as Judge Heikkila held. So, we can get all that from your complaint and the answers to which, the allegations to which the other side agreed? Exactly. Exactly. And Judge Heikkila correctly recognized that the definition of engaged in STB regulation for purposes of federal law, for purposes of the 4R Act, and for purposes of the state law water carrier exemption, all of those tests are the same. You're engaged in interstate commerce if you are undertaking activities that have a substantial relationship to interstate commerce and it is by statute under federal law, if you're operating on the interstate rail network, you're The Alabama Supreme Court said in construing the engaged in interstate commerce language from the water carrier exemption, the Alabama Supreme Court said it would be incongruous to have different definitions of interstate commerce for federal versus state law. Therefore, we hold that this phrase in this water carrier exemption statute that says engaged in interstate commerce has the same meaning as federal law. So even if a rail carrier only went between Tuscaloosa and Birmingham and that was its only route, because it's on rails that happen to be in the interstate network, that makes an interstate carrier? So says Congress in the ICC Termination Act and that codified a large body of existing case law in 1995. Yes. And the reason is that even if you, for example, let's say you had a short line that did only go between two locations in Alabama, because that short line is part of the interstate rail network, they're doing the last mile, they call the last mile move. So a lot of times they're moving the goods to their final destination, those goods may have originated with some of the larger railroads outside the state. And of course, those goods could be also carried intermodally by water carriers or trucks. So this codification, when Congress said even intrastate moves on this interstate rail network are part of interstate commerce because it is vital to interstate commerce that we have a robust, interconnected rail network and the health of one piece of it affects the health of the others. So let me move on to the stipulation. Where is there a finding in the order of an intent to deceive? That seems to be a requirement under Slater. It's not a requirement under Slater. Tell me why not. Okay. So the second factor... We've repeated it, by the way. It isn't just Slater that said that. No, no. We've said it in Smith and other cases too. Yes. The actual language of that second factor is that the inconsistency was calculated to make a mockery of the judicial system. Right, but we've shortened that to say, I mean, because mockery is sort of an odd word, we've said that encapsulates essentially an intent to deceive, that you were trying to deceive the court, that's what makes a mockery of it, right? Right. But judicial estoppel is not about punishing a party. It's about protecting the judicial process. So what the cases after Slater say is that that second factor, that make-a-mockery factor, which is odd language, but what that is intended to encapsulate is the caution in the U.S. Supreme Court Maine versus New Hampshire case that we should not apply judicial estoppel to inadvertent statements or to mistaken blunders. So the intent requirement is clearly met here because the state, to its credit, has candidly admitted that this was an intentional representation. This was not a stray comment. Oh, there's no doubt of intent in that manner, but the question is whether there's an intent to deceive. I'll just say in Smith versus Haynes and Haynes, which is a 2019 case, we said that the important thing to look at is whether, quote, the party, quote, intended to mislead and deceive the court. I just . . . if that is a requirement, it seems to me that the order did not make that finding. Do you agree? Assume with me for the moment that I believe that is a requirement as part of the mockery determination. Do you agree that the order is deficient? No, I don't because I do think because Judge Heikkila recognized that under Slater, she has to look at all of the facts and circumstances. She can't simply assume that there was this intent to make a mockery factor is met. Some of the facts and circumstances that Judge Heikkila considered is the fact that this was not a single representation, that it was made actually four separate times between 2008 and 2016. It was in the answer to the complaint and then three following pretrial and preliminary injunction stipulations. We do have a change in law that occurs. How do you address that? There's actually not a change in law because there were two open issues at the time that the state first began making . . . It certainly became important when the Supreme Court spoke on the issue of competition, which is what caused the state to switch the stipulation. The state has provided evidence that when it entered into the stipulation, it was just not an issue that was going to decide the case one way or the other. I don't think that's what they said. I think what they said is it was an open question. There was a circuit split on whether competitors were a proper comparison class for purposes of judging discrimination under B-4. Some circuits said yes. Some said no. For all factual stipulations, I'm sure you would concede that there are reasons that parties enter into it. They're trying to streamline what is an extraordinarily cumbersome litigation in this case. They went ahead with an open issue and entered into that factual stipulation. They see that the Supreme Court does opine on the issue and then they start to change. Why isn't that allowed? What they could have done is they could have said we are stipulating to CSX only. We see those kind of stipulations. They certainly could have come up with more precise language. I would agree with that. Then we wouldn't have this issue. Certainly. They didn't. They could have also said we are simply not contesting this fact for purposes of this litigation that would have preserved their ability. Isn't that necessarily implied anytime parties enter into a factual stipulation? We're going to streamline the case so we're just going to agree in this case as to this party. No, because you see stipulations all the time that says we're not agreeing that you're correct on this particular fact. We are agreeing for purposes of this motion or for purposes of this litigation. They're taking a judicial position in a case. Litigators do that all the time for whatever reason. Maybe even stipulating when they don't have the evidence, when they're wrong, they take that position. Absolutely. Judicial estoppel operates on the position taken in one forum and in the second forum. Correct. The reason that there's the rule is to protect the judicial process. The test is can you read the CSX3 opinion? Can you read this court's CSX opinion and understand that it's not industry-wide? Absolutely not. No way to read it that way. Judge Heikkila was correct. The language is emphatic. It's unambiguous. I'm quoting now from pages four, nine and thirty-eight of her opinion. It's emphatic, unambiguous, permits only one answer and leaves no room for argument. At the same time though, it was not a class action. The state of Alabama is, I'm assuming, not arguing that it would be permitted to change, to get rid of the stipulation as to CSX. The case is certainly binding as to CSX. What Alabama is suggesting though is in a non-class action case, there really only binds CSX. I think what your Honor is getting to, so why was the CSX decision an industry-wide ruling? The reason is it's simple. It's because that's the challenge that CSX brought. Remember CSX asked for two types of relief, declaratory judgment and an injunction. Now the injunction request was limited to CSX as the only railroad then before the court. The declaratory judgment request was not. That's why the allegation in CSX's complaint about competition doesn't say CSX competes with water carriers. It says the rail industry competes with water carriers. The declaratory judgment request was a facial challenge to the tax, not an as-applied challenge. CSX was not claiming that the tax was discriminatory as applied to its particular operations in Alabama. That's why there's nothing in the complaint about CSX's particular operations in Alabama. Instead, CSX was claiming that the tax is facially invalid as applied to all railroad diesel fuel. You heard how I read the order. Do you read it that same way? I'll repeat that. Sorry. How I read the order is that the judicial estoppel applied to the state. And because the state, as a matter of state law, because the state was enjoined as a matter of state law, the municipalities could not issue a tax. We agree, yes. Okay. Why is that not an enormous problem under the Tax Injunction Act? Because the court didn't violate the Tax Injunction Act simply by applying state law to determine the nature of the state tax. I agree with, as you just phrased that, I agree. It went a little further than that, did it not? No, I don't think so, Your Honor. The district court did not enjoin the municipalities from enforcing the tax? The court did enjoin, but the reason that the court enjoined is because – I get the reason why, but the problem is once it enjoins the state law and municipal law, that becomes an issue under the Tax Injunction Act. Whatever the reason it got there, a federal court is prohibited, it seems to me, under the Tax Injunction Act from doing that very thing, right? Not if it's a 4R Act violation. But that's the problem. So we're in the district court's order, because I thought you agreed with me, you read the order that way. The district court didn't find that the municipalities violated the 4R Act. What they said is the state violated it, we enjoined the state, and because the state can't collect this tax as a matter of state law, the municipalities can't, and so they're enjoined too. So the way the court phrased its ruling on this issue was influenced by the argument that the state and locals had made. So the arguments that the locals made at the lower court level was that the injunction against the state will not bind us. And so that's why the court phrased its ruling in the way that it did. Why would it bind them? But if it – listen, the court clearly had authority after finding a violation to enjoin the state. There's no dispute about that. Once it did that, though, and once it enjoined the municipalities without finding that the municipalities violated, I'm just having trouble seeing how that doesn't run headlong into the Tax Injunction Act. Well, it's not a separate tax. That's what the court found. You don't have to do a separate analysis to see if the locals have violated the 4R Act, because this is not two separate taxes. It's one tax. Where did the district court say that? That is not what I understand the district court's order to be. There's only a single paragraph in Judge Heichel's opinion that addresses this issue, and it addresses it in the terms that the locals – the argument that the locals made that an injunction against the state won't bind the locals. Now, the injunction in CSX bound the state and all those acting in concert or participation therewith. Where would we get, either from the order or as a matter of state law, that this is all one tax? Well, there's numerous cases from the Alabama Supreme Court that explain that the locals have no inherent power to tax. There's no – I don't dispute that, and I think I'm with you on that issue as a matter of state law, but that's not – that's separate and apart from this being one tax. They can issue a tax. They might not have the authority to do it, but that doesn't mean the tax is the same as the state's tax. It just means their authority to impose it derives from the state, right? So the taxing power is part of the sovereign power of the state. It resides with the state. And in some states, locals do have inherent separate powers to tax. That's not true in Alabama. That is undisputed. None of the locals argue that they have some kind of separate power of taxation that doesn't come from the state. And so what the court did is said, if we enjoin the state, what effect does that have on the local taxes? And under Alabama law, the court said there are multiple Alabama Supreme Court cases that say these taxes – Why not leave that as a matter of state law? You guys have a ton of cases. I've looked. There's dockets. There's pending a ton of these cases, including at the Alabama Supreme Court. Why not just leave that as a matter of state law once the state was enjoined? Why does the court have to go a step further, and does that step further cause a problem here? Okay, because we would be back here for another appeal. Now, the state courts did agree with Judge Heikkila, both Judge Price in the Montgomery refund case and Judge Vance in the Birmingham refund case. They agree that if the state lacks the power to tax – And that's what the 4R Act does. The 4R Act removes a power from the state. So the state no longer – Once this court ruled in CSX that the state tax violated the 4R Act, what does that mean? It means that the state no longer has the power to tax railroad diesel fuel. And that ruling – So when the court – And if you'll forgive the clumsy metaphor, but when the court chopped down the tree that is the tax on railroad diesel fuel, the branch that is the local version of that tax fell with it. And that's what Judge Heikkila ruled. And she was not issuing injunction based on some kind of state law violation. Every 4R Act case that you read begins with a recitation of the state tax scheme and how it works. And that is always, as a matter of necessity, a matter of state law. In fact, even in subparagraph C of the 4R Act, it directs the court that on certain issues, the state law will determine the burden of proof in taxation. So the fact that this is a federal court in a 4R Act applying state law is not unusual. And the court did not – By the way, this was not an eerie guess. The court had multiple Alabama Supreme Court decisions. I'm not – We'll talk about the state law thing. Whether this was on force, solid, rock solid as a matter of state law is a separate question from whether it had the authority to do what it did. But let's talk about the state law issue because your opposing counsel has gotten up here and has said, Alabama works a little differently, and I'm a little familiar with Alabama law. Once upon a time, I was an Alabama lawyer. And as I understand it, the state sort of – the state constitution rules everything. And there are carve-outs both within the state constitution and the Alabama code for what municipalities and counties can and cannot do. For instance, you can serve liquor on a Sunday or you can't serve liquor on a Sunday, that being sort of a classic example. Your opposing counsel says, at least with regard to some of the municipalities, the authority derives not from the parallelism statute but from separate and independent authority under Alabama law, which allows them to impose the tax. Is that right? Is that not right? And why? It's not right. First, two points. One, it wasn't an argument raised below, so it's been waived. Number two, it's not correct as a matter of Alabama law because the Alabama Supreme Court has said all taxation authority resides in the state. And the locals only have the ability to exercise whatever piece of that state taxing authority that the legislature has chosen to delegate to them at any given point in time. Now, the state giveth and the state taketh away. The locals are always subject to the whims of the legislature on their taxation powers. Let me ask this. Can the state allow a municipality to impose a tax that the state itself does not impose? No, that's the City of Mobile case. That's State v. Butler. That's the Citizen Bank case that we cited. If the state does anything that destroys its power to tax, that defect travels down and applies equally to the local version of that state tax. And that's all these taxes are. These are just local versions of the state tax. That's consistent, by the way, with how federal law deals with state and local taxes under the Tax Injunction Act and under the Dormant Commerce Clause. The court has held in numerous cases that because state... When you have a state like Alabama where you don't have separate local taxing authority, state and local taxes must always be considered together as one. And they're a single tax. Particularly when you're looking at the burdens of interstate commerce. And the 4R Act is a statute that is concerned with the burdens on interstate commerce. There's another aspect to this local idea, this idea that we have to prove a separate violation in Tuscaloosa or in Irondale. Well, the fuel that these railroads are purchasing in Tuscaloosa and Irondale is not just used to move freight within the city limits of Irondale or Tuscaloosa. Those railroads use that fuel to move freight in and out of the state and all over the state. And so it makes no sense when you're concerned with impacts on interstate commerce. And there was... You know, my colleague argued that it's the taxing jurisdiction. There's nothing in CSX 1 or CSX 2 that says the taxing jurisdiction is local. Because when you're talking about interstate commerce, the economic unit is the nation. And you're looking at it at a nationwide view. The statute itself does seem to suggest that there are subdivisions within a state that will have separate taxes. No, I would disagree. There is a reference to political subdivisions in the 4R Act, but that's because the taxation... Remember, the 4R Act has lots of different kinds of things that can violate other than B-4. So you've got valuation issues, you've got assessment issues, you've got rate issues. And the way that railroad taxation works is the state often will value the railroads and assess the tax, and the locals are the ones that levy and collect at a particular rate. So you can have violations because of the bifurcated nature of railroad taxation. You can have separate violations by a state and a political subdivision. Now, that does... Yeah, but that language isn't specific to subsections 1 through 3. It covers 1 through 2, 3, and 4, which deals with the discriminatory tax provision, right? Right, but you can have... Subsection 4 is a catch-all. You can have all kinds of discrimination under subsection 4. In the almost 50 years that the statute has been in effect, no case has ever said you've got to analyze the local taxes separately from the state taxes. Thank you. And we would ask that you affirm. Thank you. Mr. LaCour, you have two minutes. Mr. LaCour. Thank you, Your Honors. A few quick points. First, to begin with, the judicial estoppel. Judge LaCour, your point, there is no finding of an intent to mislead. As my friend just recognized, that should be the end of the judicial estoppel argument that they've been pressing, because Slater does say at 1186 that the district court needs to decide whether a plaintiff intended to mislead the court. But later on that same page of the en banc decision, the district court should look to, quote, whether the debtor purposely intended to mislead the court. There's no finding of intent to mislead. There's no evidence of intent to mislead. There is no basis for judicial estoppel. That is a legal error that constitutes an abuse of discretion. Moving on, the district court's view of precedent is unsupported by how case law works. Under its view, even if all the rivers in Alabama dried up tomorrow, we'd still have to grant a water carrier exemption to railroads, perhaps for time immemorial, based on a factual statement in an opinion. But this court resolves legal issues, not factual disputes. This court could not and did not convert CSX's suit into a class action. That's exactly what the district court's order does, though. Neither Article III nor Equity allow for that. And for that reason, this court should also reverse. I heard today for the first time that CSX was actually bringing a facial challenge. I don't believe that's in the briefs. It's certainly not reflected in the injunction that CSX obtained, which runs only to CSX. Indeed, if you look to their complaint, they say, CSX says this, this is a civil action seeking to restrain and join defendants from collecting from plaintiff Alabama sales and use taxes on plaintiff's purchase or consumption of diesel fuel. It was not a class action. It's an error to read the CSX decision as granting class-wide relief. Finally, there isn't a single case the parties have found or presented to you all in which judicial estoppel has applied in a case like this where a defendant stipulated to an element of the plaintiff's claim in order to streamline litigation, lost as a result, and then was punished by being forced to make the same concession to tag-along plaintiffs. That does not protect courts in any way. It is going to burden them with more and more contentious litigation that does not need to happen. Thank you. Thank you. Mr. Penfield, you have a minute. Thank you, Your Honor. I'd like to briefly address the questions regarding the Tax Injunction Act and the parallel taxes. First of all, there is nothing that took place in the CSX case that repealed Alabama code. Alabama sales tax, Alabama use tax, those are still taxes that are on the books, and therefore the local defendants' acts are still on the books and you can tax. There's nothing in that opinion that says if the state imperfectly taxed, then all of a sudden the locals cannot tax at all. That is a question of whether you're violating the 4R Act. Also, with regard to the Tax Injunction Act and the provision of the 4R, it says that notwithstanding the Tax Injunction Act, a district court has jurisdiction, and then it says this, to prevent a violation of subsection 4B of this section. It's specific. It doesn't say to get a derivative tax off the books. And as the Railroad said, in the case in front of Judge Vance, the city's local tax is invalid under Alabama common law and statutes because the state's tax violates the 4R Act. Thank you. Thank you. Thank you all. Well argued by all. We have your case under advisement. Thank you. Our final case is...